UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

RECO SIMMONS,

        Plaintiff,                      Case No. 1:24-cv-984

v.                                    Honorable Robert J. Jonker

UNKNOWN BETCKO et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104–134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

**I.    Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Corrections Officer Unknown Betcko,

Resident Unit Manager Brooke Oversmith, and former Warden John Davids.[1] (Comp., ECF No. 1, PageID.2–3.)

Plaintiff alleges that on January 24, 2023, Plaintiff was exercising by jogging on the basketball court/yard when he stepped in a drainage hole that was the size of two baseballs. "This caused Plaintiff's right leg to buckle" and he fell and hit his knee "very hard" on the concrete. (*Id.*, PageID.4.) Plaintiff suffered "immediate excruciating pain." (*Id.*) Other prisoners and officers heard Plaintiff's screams and ran to his aid. Plaintiff was placed in a wheelchair and was taken to medical by non-party Sergeant Morgan, where he was given an icepack, crutches, Tylenol, and an ace bandage. In addition, an appointment was scheduled for Plaintiff with the doctor/medical provider. (*Id.*)

The next day, January 25, 2023, Defendant Betcko told Plaintiff that there had been a work order put in on the drainage hole for more than four years. (*Id.*) Defendant Betcko further stated that "she [had] 'been' aware of the hole, so Plaintiff and others [also] should have known [about it,]" so she did not care about Plaintiff's injury. (*Id.*) After speaking to Defendant Betcko, Plaintiff sent kites to Defendants Davids and Oversmith asking why the drainage hole had not been fixed prior to his injury since everyone apparently knew about it. (*Id.*) Plaintiff subsequently filed a grievance. (*Id.*, PageID.5.)

Plaintiff states that the drainage hole was repaired after his injury. (*Id.*) A couple of days later, Plaintiff spoke with Defendants Oversmith and Davids while they were making rounds and they admitted to knowing about the drainage hole prior to Plaintiff's injury but stated that it had not been at the top of their to–do list because it was not important. (*Id.*)

---

[1] Plaintiff sues Defendants in their individual and official capacities. (Compl., ECF No. 1, PageID.2–3.) As set forth herein, the Court will dismiss Plaintiff's complaint for failure to state a claim and that determination resolves all of Plaintiff's claims.

Plaintiff asserts that the Defendants' failure to repair the drainage hole in a timely manner resulted in his injury. (*Id.*) Plaintiff states that because of his injury, he now suffers from chronic pain and stiffness in his joints, occasional swelling, and numbness, and cannot sit or stand for extended periods of time. (*Id.*) Plaintiff has been diagnosed with sciatic nerve pain and cannot walk up the stairs or perform basic exercises without pain. Plaintiff also states that the pain interferes with his ability to sleep. (*Id.*)

Plaintiff claims that on February 22, 2023, at 4:22 p.m., Defendant Betcko retaliated against him when she told him that she had thrown away the response to his step I grievance. (*Id.*) Plaintiff had listed Defendant Betcko on the grievance as one of the individuals who had been deliberately indifferent to the danger posed by the drainage hole. (*Id.*) Defendant Betcko said that the grievance had been resolved by Sergeant Coscarelli, so she sent it to the shredder. (*Id.*, PageID.6.) When Plaintiff told her that she was retaliating against him, Defendant Betcko said, "Does it look like I give a f**k?" (*Id.* (asterisks in original).) Plaintiff states that his step II and III grievance appeals were denied. (*Id.*)

Plaintiff claims that Defendants Davids, Oversmith, and Betcko were deliberately indifferent to a risk of harm in violation of the Eighth Amendment. Plaintiff also states that Defendant Betcko retaliated against him in violation of the First Amendment and interfered with his due process right to exhaust administrative remedies in violation of the Fourteenth Amendment. (*Id.*) Plaintiff seeks compensatory damages and injunctive relief. (*Id.*, PageID.6–7.)

**II.    Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels

3

and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well–pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Eighth Amendment

As noted above, Plaintiff states that Defendants violated his rights under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene

society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions–of–confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate–indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or

5

safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

The reason for focusing on a defendant's mental attitude is to isolate those defendants who inflict punishment. *Farmer*, 511 U.S. at 839. The deliberate indifference standard "describes a state of mind more blameworthy than negligence." *Id.* at 835. As the Supreme Court explained:

> The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.* at 837–38 (citations omitted). Thus, accidents, mistakes, and other types of negligence are not constitutional violations merely because the victim is a prisoner. *Accord v. Brown*, No. 93–2083, 1994 WL 679365, at *2 (6th Cir. Dec. 5, 1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Rather, what is required is a conscious disregard of a substantial risk of harm. *Farmer*, 511 U.S. at 839.

In this case, Plaintiff asserts that he was injured when he stepped in a drainage hole while running for exercise in the prison basketball court/yard. (*See* Compl., ECF No. 1, PageID.4.) Plaintiff alleges that after he was injured, Defendant Betcko told him that there had been a work order to repair the drainage hole for more than four years, and that since she had been aware of the hole, Plaintiff and others also should have known about it. (*Id.*) Plaintiff also alleges that Defendant

6

Betcko told him that she did not care about his injury. (*Id.*) Further, Plaintiff alleges that while Defendants Davids and Oversmith were conducting rounds in his unit after the incident, they "informed Plaintiff that they were well 'aware' of the drainage [hole] before [Plaintiff's] injury, but it wasn't at the top of their to-do-list because it wasn't important." (*Id.*, PageID.5.)

Plaintiff's allegations, at most, show that Defendants were aware of the drainage hole in the yard and the need to repair it. However, Plaintiff's allegations fail to show that any of the Defendants were aware of an excessive risk to inmate health or safety caused by the drainage hole. Rather, Defendant Betcko's statement that the drainage hole had been there for a long time suggests that it was open and obvious. Plaintiff does not allege that other inmates had suffered similar injuries or that there had been prior complaints showing that the drainage hole posed an imminent danger to inmates who were using the yard/basketball court.

In *Lamb v. Howe*, a case with similarities to Plaintiff's, the Sixth Circuit concluded that the prisoner-plaintiff failed to state an Eighth Amendment claim in his slip-and-fall case "[d]espite [the prisoner-plaintiff's] attempt to differentiate [his] case" by claiming, *inter alia*, that he had repeatedly warned guards about the water in his cell because the prisoner-plaintiff's "claim that his repeated warnings indicate that the risk was serious would turn the objective substantial-risk test into a subjective test based only on a prisoner's repeated complaints." *Lamb v. Howe*, 677 F. App'x 204, 209 (6th Cir. 2017). Likewise, in *Bell v. Ward*, another slip-and-fall case, the United States Court of Appeals for the Seventh Circuit explained that although the prisoner-plaintiff claimed that prison officials "knew of the wet floor and 'deliberately' refused to remedy the situation . . . by[, *inter alia*,] ensuring that the floor was dry, or at the very least by posting warnings about the hazards of water on the floor," the prisoner-plaintiff's allegations did "not suggest a substantial risk of serious harm that reflects the deliberate indifference required to impose liability

7

under the Eighth Amendment." *Bell v. Ward*, 88 F. App'x 125, 126–27 (7th Cir. 2004) (emphasis omitted) (citations omitted). The Seventh Circuit explained that "wet floors do present a possibility that inmates might slip," however, the prisoner-plaintiff "acknowledge[d] that he and 'other inmates of the wet area' had previously crossed the wet floor without slipping." *Id.* at 127. Under these circumstances, the Seventh Circuit found that at most, the prisoner-plaintiff had "shown that jail officials were negligent, but negligence alone is not enough to support a claim of deliberate indifference." *Id.* (citing *Daniels v. Williams*, 474 U.S. 327, 332 (1986); *Farmer*, 511 U.S. at 837).

Similarly, Plaintiff's complaint, at most, alleges that Defendants were negligent in their duty to protect him from hazardous conditions, which is insufficient to state a claim under the Eighth Amendment. *See Farmer*, 511 U.S. at 835.

  **B.**  **Defendant Betcko**

    **1.**  **Due process**

Plaintiff alleges that Defendant Betcko told him that she had thrown away the response to his step I grievance, stating that "it was resolved by [non-party] Sgt. Coscarelli, so [she] sent it to the shredder." (Compl., ECF No. 1, PageID.6.)

Initially, the Court notes that Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99–3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th

8

Cir. 2001); *Wynn v. Wolf*, No. 93–2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant Betcko's conduct could not have deprived him of due process.

Moreover, Plaintiff alleges that he exhausted his administrative remedies by filing grievance appeals through step III. Therefore, even if Plaintiff had a due process right to the grievance process, it is clear that Defendant Betcko's conduct had no effect on his ability to exhaust his remedies.

### 2.    First Amendment – Right to Petition Government

The Court further notes that Plaintiff's right to petition government could not have been violated by interference with the grievance process. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999).

Defendant Betcko's actions could not have barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds*

*v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

### 3.     Retaliation

Plaintiff asserts a retaliation claim against Defendant Betcko. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

In this case, Plaintiff asserts that he engaged in protected conduct when he filed the grievance against Defendant Betcko and other officials for failing to repair the drainage hole, and that Defendant Betcko's alleged destruction of his step I grievance response was motivated by a desire to retaliate against him. (ECF No. 1, PageID.6.) However, Plaintiff does not allege facts showing that an adverse action was taken against him that would deter a person of ordinary firmness from engaging in protected conduct.

10

The Court notes that "[a]n adverse action is one that is *capable* of deterring a person of ordinary firmness from exercising the constitutional right in question." *Lappin*, 630 F.3d at 472 (emphasis in original) (citation and internal quotation marks omitted). "*Actual* deterrence need not be shown." *Harbin–Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) (emphasis in original). "[T]his element is not an overly difficult one for the plaintiff to meet." *Lappin*, 630 F.3d at 472. Consequently, "unless the claimed retaliatory action is truly inconsequential, the plaintiff's claim should go to the jury." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002) (citation and internal quotation marks omitted).

The Sixth Circuit recently addressed the issue of whether the destruction of grievances constituted an adverse action for purposes of a First Amendment retaliation claim:

> This court has previously agreed with other circuits that "confiscating an inmate's legal papers and other property constitutes a sufficient injury to support a First Amendment retaliation claim." *Id.* at 604 (collecting cases). At issue in *Bell* was whether the inmate alleged a plausible adverse action after prison guards, among other things, stole the plaintiff's legal and writing materials in retaliation for filing lawsuits. In holding that this act constituted an adverse action, this court explained: "The fact that defendants repeatedly stole plaintiff's legal papers certainly had the potential to directly impede his pursuit of his claim, and may have caused others to believe that any efforts they might expend in preparing legal claims would be wasted since any materials they prepared could easily be destroyed or confiscated." *Id.* And in concluding that this retaliatory act survived the "ordinary firmness" standard, the court emphasized that the standard is intended only to "weed out . . . inconsequential actions." *Id.* at 606 (citation and internal quotation marks omitted). The court ultimately deemed the plaintiff's allegations consequential, thus allowing the lawsuit to proceed as a First Amendment retaliation claim. *Id.*
>
> The logic behind *Bell* applies in the present case. Richards alleges that he attempted to file grievances accusing Perttu of sexual harassment. But in response to Richards's attempts, Perttu allegedly destroyed the grievances. We see no meaningful difference between the alleged destruction of Richards's grievances and the alleged theft of the legal papers in *Bell*. In *Bell*, the court was concerned with even the "potential" to impede the plaintiff's ability to engage in protected speech. *Id.* at 605. Here, we have more than "potential" interference with protected speech because Perttu is alleged to have directly destroyed Richards's grievances. *See Herron*, 203 F.3d at 415 (holding that the First Amendment protects an inmate's right to file grievances against prison officials). Richards's allegations therefore satisfy the second element of a First Amendment retaliation claim.

*Richards v. Perttu*, 96 F.4th 911, 918 (6th Cir. 2024), *cert. granted*, No. 23–1324, 2024 WL 4394132 (U.S. Oct. 4, 2024).

This case is distinguishable from *Richards* because it is clear in the instant case that there was no potential to impede Plaintiff's ability to engage in protected conduct. The Court notes that despite Plaintiff's assertion that his step I response was destroyed by Defendant Betcko, Plaintiff attaches a copy of the step I grievance and the step I response to his complaint. (ECF No. 1–1, PageID.12–13.) Therefore, if Defendant Betcko shredded a copy of the grievance response, it does not appear that Plaintiff was prevented from obtaining a copy. The grievance response states:

> Investigating the issues of this grievance, I have found that prisoner Simmons was seen by ICF Health Services on 1/24/2023 and again on 1/30/2023 due to stepping in a hole in the unit 5 courtyard. A work order was submitted on 1/26/2023 by Sgt. Coscarelli to have this hole repaired. Nick Clark (ICF P[h]ysical Plant Supervisor) has been made aware of this hole and states that the hole will be fixed.

(*Id.*) The grievance was considered resolved. (*Id.*)

Moreover, Plaintiff states in his complaint that he appealed the response to his step I grievance to steps II and III and that his grievance appeals were denied at each level. (ECF No. 1, PageID.6.) The response to Plaintiff's step II appeal is also attached to his complaint and indicates that his appeal was denied for lack of merit, which shows that Plaintiff was not prevented from exhausting his grievance remedies. (ECF No. 1–1, PageID.15.) Because the claimed retaliatory action in this case, if true, is truly inconsequential, the Court concludes that Plaintiff's retaliation claim against Defendant Betcko is properly dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See*

*McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three–strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   October 31, 2024                              /s/ Robert J. Jonker
                                                       Robert J. Jonker
                                                       United States District Judge